STEPHEN M. SHAW 4336
P.O. Box 2353
Honolulu, Hawaii 96804
Telephone: (808) 521-0800
Email: shawy001@gmail.com

Attorney for Plaintiff
NORMAN P. JOHNSON, PhD.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| NORMAN P. JOHNSON, PhD., | ) | CIVIL NO. 20-378 |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | COMPLAINT; |
| | ) | DEMAND FOR JURY TRIAL; |
| ASSOCIATION OF APARTMENT | ) | |
| OWNERS OF WAVECREST | ) | |
| (Entity Form Unknown), and | ) | |
| DOES 1-30, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>COMPLAINT</u>

## FIRST CAUSE OF ACTION -
## FOR VIOLATION OF HRS CHAPTER 480
## (HAWAII UNFAIR AND DECEPTIVE PRACTICES ACT)

Plaintiff NORMAN P. JOHNSON, PhD. ("Dr. JOHNSON" or "Plaintiff")

through undersigned counsel, hereby states for his Complaint as follows:

1.     Dr. JOHNSON is, and was at times relevant to this Complaint, a

citizen of the State of Washington. Defendant ASSOCIATION OF APARTMENT

OWNERS OF WAVECREST is a citizen of the State of Hawaii.

1

2.      The amount in controversy, without interest and costs, exceeds the sum of $75,000 or value specified by 28 USC §1332(a). The parties are citizens of different states. 28 USC §1332(a)(1).

3.      Plaintiff is a homeowner in a condominium project in the County of Maui (Island of Molokai), State of Hawaii. He bought a residential unit with his wife (not a party hereto) at the Property on January 4, 2018.

4.      ASSOCIATION OF APARTMENT OWNERS OF WAVECREST ("AOAO") is and was at all times relevant to this Complaint an entity, form unknown, with its offices and principal place of business located at 7148 Kamehameha V Hwy, Kaunakakai, Hawaii 96748 (herein "Property" or "WAVECREST") on the island of Molokai, in the County of Maui. Defendant's duties to Plaintiff relating to said condominium project include compliance with state and federal laws, holding special meetings (particularly in emergencies), rule-making, disclosure of records, compliance with the governing documents, fair and honest application of rules and procedures relating to fines, owner-based management and operation of certain land and improvements at the property, negotiating and litigating with insurance companies who refuse to settle claims against the AOAO, and oversight or removal of unfit officers, agents, debt collectors, and/or employees.

5.      Defendant AOAO's acts and omissions at issue were, and are, being done by its president and other officers; as well as by its managers, directors, agents, employees, board/AOAO attorneys and debt collectors (collectively referred to herein as "AOAO" "WAVECREST" or "AOAO Defendants").

6.      Defendant DOES 1-30 (collectively referred to as "DOES") are, on information and belief, persons, trustees, trusts (either revocable or irrevocable), corporations (both for profit and nonprofit), partnerships, limited partnerships, LLCs, joint ventures, participants, aiders and abettors, and/or other entities, the identity of which Plaintiff has not been able to ascertain at this time despite good-faith inquiry. On information and belief said DOES have an interest in this action in that they are responsible, either severally or jointly for the damages sustained by Plaintiff from the wrongful conduct and/or omissions by Defendant AOAO as alleged in this lawsuit; by being agents of the AOAO and/or by being involved because of negligence, gross negligence, recklessness, willful or intentional misconduct, or other in improper action, in legally causing damages or injury to Plaintiff. All defendants have been named in this Complaint about which Plaintiff has knowledge based on investigating the claims against Defendant AOAO up to this time, and based on good faith search of available records and other sources of information. Plaintiff may seek leave, after reasonable opportunity for further investigation and/or discovery as further wrongdoers are identified in this action, to

name additional defendants to be certified by the Court as DOE Defendants pursuant to the rules of civil procedure.

7.     Certain corporate or other entities must be disregarded, according to proof, to avoid fraud. Defendants provisionally designated as DOES having an interest in this lawsuit were, on information and belief, *alter egos* of corporate or entity defendants which were undercapitalized. There is a unity of interest between the individuals and the entities. Letting them act as any entity's *alter egos* would sanction fraud or promote injustice with respect to the conduct alleged in this lawsuit.

8.     At all times relevant herein, the AOAO's employees, agents, debt collectors, servants, officers, directors, board/AOAO counsel, and other representatives of Defendants were acting within the course and scope of their employment, agency, and service with their principals or employers; and, therefore, the Defendants are liable to Plaintiff for the tortious conduct of the above-mentioned employees, agents, servants, and representatives as set forth herein, under the doctrines of vicarious liability, *respondeat superior* and/or agency principles.

9.     In the event of discovery by Plaintiff, or if one or more defendants contend or assert, that any act or omission by a director, employee, agent, board/AOAO counsel, servant or representative, was <u>outside</u> the course and scope

of his/her agency, employment, and/or service with any principal, client, or employer, then Plaintiff will seek leave to identify as a defendant any DOE Defendant liable for negligent supervision, training, retention, or hiring. Also, any DOE guilty of exceeding the aforesaid course and scope of his/her directorship, agency, employment and/or service may also be named and joined as a Defendant herein by amendment.

10.     Plaintiff gives notice to Defendants of a litigation hold barring the AOAO, its record custodians, managing agent, debt collectors, employees, agents, officers or directors, and DOES 1-30 from destroying, losing, overriding, purging, or otherwise spoliating any information relating to this lawsuit or the facts stated herein, without written consent of Plaintiff or his attorney.

**COUNT ONE**
**(DECEPTIVE HOUSE RULES PRACTICES)**

11.     Plaintiff restates and realleges paragraphs 1-10 by this reference and incorporates them therein.

12.     Plaintiff is a consumer as defined by HRS §480-1 who, primarily for personal, family or household purposes, purchased a condominium and, at the same time, committed money for this personal investment. At all times, Plaintiff intended that his condominium at WAVECREST would be a personal investment, being a fee-simple residential unit, appreciating in value.

5

13.     In addition to the purchase price for his residence paid on January 4, 2018, Plaintiff also committed money (included in his maintenance fees) for fiduciary, owner-based management, and operation of the Property. These sums were only for fair, honest management, and operation of the Property, including disclosure of records, dispute resolution, and fair, honest application of House Rules and fine/penalty procedures. To that end, Plaintiff reposed confidence in Defendant AOAO and its managing agent. As a result he entrusted part of his monthly payments for maintenance fees to be applied by Defendant for owner-based management by the AOAO, a fiduciary, in amounts which will be established according to proof. All misused portions of his monthly maintenance fees are fairly traceable as damages to Plaintiff as economic losses legally caused by Defendants, each month.

14.     Defendants engaged in acts or practices that were unfair and/or deceptive as hereinbelow described, all to the damage fairly traceable to Defendants' conduct, which was in willful disregard of the rights of an elder. Damages included diminished value, stigma, or blight damages for each count of this and other Causes of Action. Defendants knew or should have known that their unfair and/or deceptive acts or practices were directed toward, and targeted an elder. Dr. Johnson is 76 years old. He was alone on a remote island, far away from his family in Washington. Defendant AOAO knew that Plaintiff was more

6

vulnerable during the pandemic, and otherwise, to Defendants' misconduct than other consumers. Furthermore, the extent of injury to Plaintiff, was legally caused by Defendants and was substantial.

15.    The unfair and/or deceptive acts or practices by Defendant occurred in the conduct of trade or commerce as provided by HRS §480-2. Defendants' services to Plaintiff were (and are) as operators, managers, fiduciaries and contractors with respect to the Project, and were performed in the context of business activities or business transactions.

16.    Plaintiff has no choice over whether or not to pay for Defendants' services by adhesive, and forced maintenance fees; even when, as here, the Defendants' "services" are performed deceptively, negligently, maliciously and/or unfairly. Said fees may not be abated in the event of a dispute, without a Court order.

17.    The wrongful acts or practices engaged in by Defendants, alleged herein, were deceptive in that they are material misrepresentations, omissions, or practices that are likely to mislead or deceive consumers acting reasonably under the circumstances, including Plaintiff. Moreover, the misrepresentations, omissions, or practices herein alleged were "material" in that the same deceptively and/or unfairly violate the requirement of fair, orderly, and non-deceptive management and operation of the Property. Materiality is also found by the

AOAO's deceptive and/or unfair refusal to promptly mediate and/or withholding of information. These services were also important to Plaintiff and other consumers. The deceptive acts and/or practices enumerated in this lawsuit are further material in that they are likely to affect consumers (and Plaintiff's) choice or conduct regarding their personal investment. This includes purchasing condominiums and paying maintenance fees for management at WAVECREST residential condominiums for a competent staff, full, fiduciary management/operation, full disclosure of information and records, prompt mediation, as well as honest, trustworthy managing agents, association officers and directors, attorneys, employees, contractors and insurers.

18.    Defendants were provided binding standards by the managing agent, Hawaiiana Management Co. Ltd ("HMC"), which include the Director's Handbook. This document confined Defendants to a single, expressed set of rules, stating that "(h)ouse Rules… define the rules of conduct for all residents of the project."

19.    In contrast to the statutory voting requirements to amend the Declaration and Bylaws, Defendant AOAO's board was, at all times relevant here, authorized to amend the House Rules by adhering to the AOAO's Bylaw §4:

> "Section 4. <u>House Rules</u>. The Board of Directors, upon giving notice to all unit owners in the same manner as herein provided for notice of meetings of the Association and opportunity to be heard thereon, may adopt, amend or repeal any supplemental rules and regulations <u>governing details of</u>

the operation and use of the common elements not inconsistent with any provisions of law, the Declaration or these By-Laws." Emphasis added.

20.     Defendant AOAO's Bylaws provide for emergency rule changes, affording an expedited mechanism for special, telephonic meetings. Bylaw Art II §8 and §8a. A special meeting by the board of directors can be held on eight hours' notice. This notice may be given by telephone. Art II §8.

21.     On March 16, 2020, Hawaii's Governor Dvaid Y. Ige issued a Supplementary Emergency Proclamation for Covid-19, suspending "Chapter 286, HRS highway safety". This suspension was in force until May 15, 2020. The effect was to suspend the need for safety checks (required by HRS §286-26) during the pandemic, as well as to suspend the requirement to register motor vehicles under HRS §286-41 and §286-71.

22.     Defendant AOAO's House Rules (revised 12-4-15) represented to consumers:

"4. All outside workers must sign in and out at the Wavecrest Office daily."

23.     The AOAO's House Rules (revised 12-4-15) represented to consumers:

"6. Parked vehicles must be in good running order and be in compliance with state registration requirements."

24.    The AOAO's House Rules (revised 12-4-15) represented vaguely and/or ambiguously to consumers:

> "**Behavioral**        violations require **immediate** correction or may result in **immediate** fine."

25.    At all times, the AOAO was the drafter or provider of the words contained in the foregoing House Rules together with other governing documents. Therefore, all ambiguities in these adhesive documents are construed against the AOAO.

26.    Despite Plaintiff's written requests for information on 5/20/20 and 5/22/20, Defendant AOAO and its managing agent (HMC) have yet to provide any proof that the aforesaid House Rules were enacted on notice, as required by Defendant AOAO's Bylaw §4. As a result, the Court should determine that Defendant's House Rules were never enacted in compliance with the AOAO's Bylaws.

27.    The practices and acts by Defendants as alleged in this lawsuit are deceptive and/or unfair. In several known instances, Defendant AOAO conducted its management and operation of the Property in 2019-20 by systematically fining owners, including Plaintiff, in a retaliatory, discriminatory, unfair and/or deceptive fashion, and by blocking contractors or workers:

(A)    by false accusations of House Rules violations;

(B)    by lack of prior warning or progressive sanctions;

(C)    by refusal to provide written notice and an opportunity to be heard to consumers before adding fines to the owners' monthly maintenance fees, which consumers are forced to pay on penalty of liens and/or foreclosure;

(D)    by refusal to amend or suspend House rules, particularly in emergencies; or when rules are unintelligible, vague, and/or ambiguous;

(E)    by retaliating and discriminating against Plaintiff after he voiced concerns at a March 19, 2020 meeting regarding management problems involving the board president.

(F)    by fraudulent and retaliatory refusal to permit cleaning service access to Plaintiff's unit and harassing his island representative with a trespass warning and falsely accusing him of trespass. The worker was barred from the Property, as pure retaliation against Plaintiff.

28.    Defendants legally caused private injury in the form of economic loss and damages to Plaintiff by the following discriminatory, retaliatory, unfair and/or deceptive acts or practices relating to its House Rules and monetary fines misconduct.

A.    **April 15, 2020.** As a separate violation of HRS §480-2, Defendant AOAO levied an "Immediate $100 fine" on Plaintiff after his friend

tried to pick up a grocery shopping list from Plaintiff, an elder, who was sheltered in place due to the pandemic. Defendant AOAO refused to permit access to Plaintiff's unit. There was no "outside worker" involved. The retaliatory, false, unfair and/or deceptive notice of violation listed the "offenses" as follows:

> "***Registration and Occupancy:*** *4. All outside workers must sign in and out at the Wavecrest Office daily.* ***Parking Lot*** *6. Parked vehicles must be in good running order and be in compliance with state registration requirements.*
>
> *Your "support person" will need to stop by the office during normal business hours to pick up a Parking Pass and register her vehicle before re-entering property."*

      **B.**    **May 12, 2020.** As a separate violation of HRS §480-2, Defendant AOAO levied a fine on Plaintiff for "250 per incident (within a 12 month period)". Plaintiff's friend was allegedly seen on the property. There was no outside worker involved. The Governor's suspension of auto registration requirements was in force until May 15, 2020. *See ¶21, supra.* The retaliatory, false, unfair and/or deceptive notice of violation listed the "subsequent violations" as:

> "Your unit is in violation of the following **Wavecrest House Rules: Registration and Occupancy:** *4. All outside workers must sign in and out at the Wavecrest Office daily.* ***Parking Lot*** *6. Parked vehicles must be in good running order and be in compliance with state registration requirements. Over the past weekend your "support worker" was seen on property, car parked in front of A-Building. Vehicle registration tag expired April 2020.*

*She failed to stop in at the office to sign in and register her vehicle as required."*

**C.    May 18, 2020.** As a separate violation of HRS §480-2,

Defendant AOAO levied a fine this day on Plaintiff for "250 per incident (within a

12 month period)" after his friend attempted to pick up Plaintiff's perishable

groceries as Dr. Johnson was leaving for the mainland the next day. Again, access

was denied. As before, there were no "outside workers" or unpermitted vehicles

involved. The retaliatory, false, unfair and/or deceptive notice of violation listed

the "subsequent violations" as:

> *"Your unit is once again in violation of the following **Wavecrest House Rule:***
>
> *__Registration and Occupancy:__ **4. All outside workers must sign in and out at the Wavecrest Office daily.** On Sunday, May 17th, your "support worker" was observed running upstairs in A-bldg.  as well as getting out of your Jeep @2:30pm right into the unpermitted vehicle that sat on the premises from 9:30am."*

**D.    May 19, 2020.** As a separate violation of HRS §480-2,

Defendant AOAO levied a fine on Plaintiff for "250 per incident (within a 12

month period)". These were imposed <u>twice</u> ($250 x 2) in this single notice of

alleged "House Rules Violation". The fines, as <u>two</u> separate HRS §480-2

violations, were imposed after the attempted grocery retrieval in ¶C, above, and to

care for Plaintiff, an elder, on a residential hygiene matter. The friend was accosted

by Defendant's board president. Said retaliatory, false, unfair and deceptive notice stated:

> "Your unit is once again in violation of the following **Wavecrest House Rule:**
>
> **<u>Registration and Occupancy:</u> 4. All outside workers must sign in and out at the Wavecrest Office daily.** *At 6:06 & 6:08 pm on 5/18/20 two vehicles belonging to your "support worker" were trespassing on property. Both vehicles are unpermitted, and both occupants of the vehicles failed to sign in."*

29.     As a separate violation of Ch. 480-2, Defendant AOAO refused to permit a contractor to clean Plaintiff's unit and falsely accused the worker of trespass – even contacting the police. See Count Nine, <u>*infra*</u>.

30.     All of the activities above were permitted or essential activities "outside the Home or Place of Residence" particularly since the travel was to care for an elderly, high risk person and to obtain groceries.

31.     For each separate violation of HRS §480-2 in this lawsuit, the minimal damages legally caused by Defendants is the greater of $5,000, or "threefold any damages sustained". Plaintiff will also seek attorney's fees and costs pursuant to HRS §480-13(b) fairly traceable to Defendants' misconduct. By example, the minimum economic loss damages for the five (5) violations in ¶28, above is $25,000.

32.     Plaintiff will likely incur further actual/special, <u>Uyemura v. Wick</u>, 57 Haw. 102 damages in the form of attorney's fees, interest and other expenditures,

14

according to proof. These third-party fees have already been incurred in trying to mediate with the AOAO's managing agent, and obtain records relating to the fines and rules from the AOAO's (nonparty) managing agent, Hawaiiana Management Co. Ltd. Therefore, Plaintiff has, as a further legal, direct and proximate result of Hawaiiana's violations of HRS §514B-154.5, HRS §514B-161(a), HRS §480-2, and the AOAO's unfair and/or deceptive practices or acts, sustained special and general damages by overpaying maintenance fees and other charges, according to proof, which are further traceable to the misconduct of HMC, as alleged in this lawsuit.

33.     Unfairly and/or deceptively Defendants legally caused economic losses, including diminished value of Plaintiff's investment fairly traceable to unfair and/or deceptive practices by Defendants. For this, and other misconduct as alleged in this lawsuit, $5,000 damages and a $10,000 Civil penalty for each incident or violation in each count of this Cause of Action should be paid by Defendants to Plaintiff, together with attorney's fees, costs, and pre-judgment interest, according to proof.

## COUNT TWO
## UNFAIR HOUSE RULE PRACTICES BY DEFENDANT AOAO

34.     Plaintiff restates and realleges paragraphs 1-16, 18-33 by this reference, and incorporates them herein.

15

35.     The aforesaid practices by Defendants and each of them are unfair because they offend established public policy; and/or they are unethical, oppressive, unscrupulous; and/or substantially injurious to consumers, including Plaintiff.

36.     Defendants violated the UDAP statute's prohibition against unfair practices by acts and/or omissions which offend established public policy as set forth by the common law, case law, and statutes, including HRS Ch. 480 (UDAP), HRS §514B-9 (good faith), HRS §514B-106(a) and HRS §514B-132(c) (fiduciary duties), HRS §514B-154.5 (records/ information), HRS §514B-69 (violation of HRS §514B-154.5, a misdemeanor), HRS §514B-161(a) mediation, the common law fiduciary duty of full disclosure; also, 18 USC §1343 (wire fraud), and 18 USC §1341 (mail fraud).

## COUNT THREE
## DECEPTIVE MEDIATION PRACTICES BY DEFENDANT AOAO

37.     Plaintiff restates and realleges paragraphs 1-36 by this reference, and incorporates them herein.

38.     On April 24, 2020, shortly after the first retaliatory, deceptive and/or unfair fine was levied on Dr. Johnson by Defendant AOAO, Plaintiff's counsel emailed a demand for mandatory mediation pursuant to HRS §514B-161(a)(1) to Defendant AOAO and its managing agent, Hawaiiana Mgmt. Co. Ltd. ("HMC").

39.     On April 30, 2020, Defendant's attorney  and debt collector responded and bound Defendant AOAO to this admission "… the association believes there is no reason to mediate the simple requirements of the association's house rules…"

40.     On May 6, 2020, Defendant AOAO attempted to terrify Plaintiff into withdrawing the valid request for mandatory mediation. Defendant AOAO's attorney and debt collector once again bound the AOAO. This time, Defendant AOAO admittedly threatened to present a "formal complaint" against Plaintiff and his counsel solely for an advantage in this civil matter. Defendant was clearly referring to criminal charges involving governmental "stay at home" orders.

41.     Since Defendant AOAO deceptively and/or unfairly refused totimely agree to mediate, Plaintiff was forced to hire a mediator on Maui. She promptly scheduled a telephonic pre-mediation conference and sent out notices. Defendant AOAO refused to appear for this conference to prepare for an evaluative mediation, in violation of HRS §514B-9 (good faith), HRS §514B-106(a) (breach of director's fiduciary duty), and HRS §514B-161(a) (mandatory mediation).

42.     Defendants thereby legally caused economic loss and damages to Plaintiff fairly traceable to Defendants' unfair and/or deceptive refusal to agree to mediate as HRS §514B-161(a) mandates. Plaintiff's economic loss for this Count was ½ of the $250 mediator's fee which is normally shared. As detailed in Count Twelve, *supra*, Plaintiff suffered additional economic loss by a portion of his

maintenance fees used to pay the AOAO's debt collector for a series of offensive, deceptive and/or unfair letters and activities specifically designed to inflict emotional distress on Plaintiff and to try to scare Plaintiff out of mediation.

43.     Therefore, pursuant to HRS §480, Defendant legally caused $5,000 damages to Plaintiff, for said violation.

## COUNT FOUR
## UNFAIR MEDIATION PRACTICES BY DEFENDANT AOAO

44.     Plaintiff restates and realleges paragraphs 1-16, 18-43 by this reference, and incorporates them herein.

## COUNT FIVE
## DECEPTIVE PRACTICES BY DEFENDANT AOAO (FEE GOUGING)

45.     Plaintiff restates and realleges paragraphs 1-44 by this reference, and incorporates them herein.

46.     Defendants are allowed a reasonable fee of "up to" $1.00/pg for copying as a discretionary charge for copying to owners for records. HRS §514B-154.5(f). The records may be provided through an internet site free of charge. Id at 154.5(d).

47.     Unfairly and/or deceptively, Defendant AOAO refused to calculate a "reasonable" fee or provide proof of its calculation. Instead, it told condominium owners, including Plaintiff, to use a commercial service for realtors. That "service"

could provide some, but not all, of the requested records to Plaintiff for a flat, commercial rate.

48.   Defendants thereby legally caused damages and economic loss to Plaintiff fairly traceable to Defendants' unfair and/or deceptive refusal to provide records as HRS §514B-154.5(f) mandates. Plaintiff's private injury in the form of economic loss was the portion of his monthly maintenance fees paid for mismanagement, including concealment of records by fiduciaries (Defendant AOAO and its agent HMC). The same will be added by amendment according to proof.

**COUNT SIX**
**UNFAIR PRACTICES BY DEFENDANT AOAO (FEE GOUGING)**

49.   Plaintiff restates and realleges paragraphs 1-16, 18-48 by this reference, and incorporates them herein.

**COUNT SEVEN**
**DECEPTIVE PRACTICES BY DEFENDANT AOAO**
**(CONCEALMENT OF RECORDS)**

50.   Plaintiff restates and realleges paragraphs 1-49 by this reference, and incorporates them herein.

51.   Defendant AOAO conducted its management and operation of the property services deceptively and/or unfairly in that it failed and refused to respond to, or comply with, Plaintiff's requests from fiduciaries (AOAO and HMC) for disclosure of information or records. In addition, Defendants refused to

comply with HRS §514B-154.5 which also required production of records and information. The same constituted an omission or practice likely to mislead or deceive consumers acting reasonably under the circumstances, such as Plaintiff.

52.    On May 4, 2020, as a result of the Defendant's refusal to mediate, Plaintiff's counsel sent the AOAO's attorney an HRS §514B-154.5 records/ information demand, for among other things:

> "14.   Written House Rule changes with voting records since the AOAO's first response to the pandemic;
>
> 15.    All records relating to the alleged incident which the AOAO's Notice of House Rule Violation is based;"

53.    Defendants unfairly and/or deceptively refused, and still refuses, to provide these and other records.

54.    The omissions or practices were material in that they involved information important to Plaintiff regarding the prompt removal of the adhesive and unconscionable personal fines. Information/records management is also material to the pro-rated charges to Plaintiff for unfair and/or deceptive management/operation as well as legal fees included in Plaintiff's forced maintenance fees. Refusing to respond to Plaintiff's information demands was likely to mislead Plaintiff and other consumers of Defendants' condominium management services and property operation, particularly when condominiums at WAVECREST are to be sold. The tactic thereby created blight or stigma damages,

reducing and diminishing the value of consumers' and Plaintiff's personal investment in residential real estate.

55.     Defendants thereby legally caused economic loss to Plaintiff fairly traceable to Defendants' unfair and/or deceptive concealment of records in violation of HRS §514B-154.5. Plaintiff's economic loss was the portion of his monthly maintenance fees paid for management, including handling of records and diminished value of his personal investment, according to proof.

## COUNT EIGHT
## UNFAIR PRACTICES BY DEFENDANT AOAO
## (CONCEALMENT OF RECORDS)

56.     Plaintiff restates and realleges paragraphs 1-16, 18-55 by this reference, and incorporates them herein.

## COUNT NINE
## DECEPTIVE PREVENTION BY DEFENDANT AOAO OF
## MAINTENANCE/CLEANING OF RESIDENCE

57.     Plaintiff restates and realleges paragraphs 1-56 by this reference, and incorporates them herein.

58.     Unfairly and/or deceptively Defendant AOAO caused further economic loss to Plaintiff fairly traceable to its actions by preventing Plaintiff, an elder, from maintaining his unit. On or about June 9, 2020, the AOAO in retaliation for Plaintiff's foregoing actions, refused to permit registration or to admit an individual hired to clean his unit while Dr. Johnson was on the mainland.

Defendant harassed said individual, by maliciously accused him of trespassing and calling the police. The amount of economic loss damages will be added by amendment according to proof, which minimally is $5,000.00, for each related violation.

59.    The Defendants' above-alleged unfair and/or deceptive acts and/or practices violated HRS §480-2. The same and caused private injury to Plaintiff in the form of actual economic loss legally caused by the unfair or deceptive practices fairly traceable to the acts or omission of Defendants.

## COUNT TEN
## UNFAIR PREVENTION BY DEFENDANT AOAO OF MAINTENANCE/CLEANING OF RESIDENCE

60.    Plaintiff restates and realleges paragraphs 1-16, 18-59 by this reference, and incorporates them herein.

## COUNT ELEVEN
## DECEPTIVE MAINTENANCE FEE OVERCHARGES BY DEFENDANT AOAO

61.    Plaintiff restates and realleges paragraphs 1-60 by this reference, and incorporates them herein.

62.    On January 4, 2018, Plaintiff and his wife (not a party hereto) purchased a unit at WAVECREST. Thereafter Plaintiff was induced (and compelled) to pay Defendant AOAO monthly maintenance fees for common

expenses, including expenses for, what was supposed to be fair and/or honest administration and management.

63.    Therefore, based upon Defendants' unfair and/or deceptive practices alleged in this lawsuit, Plaintiff suffered private injury. Defendants legally caused damages to Plaintiff each time he made a payment to Defendants for maintenance fees, including the portion which was, or should have been allocated to management/operation of the property, legal expenses, and/or insurance premiums and deductible payments, particularly for D&O and liability coverage. Plaintiff suffered separate actual economic loss legally caused by Defendants unfair and or deceptive practices, for each monthly payment - a violation, according to proof. Said damages minimally stand at $5,000.00 per month since Plaintiff's purchase date of 1/4/2018, for $165,000.00 in economic losses.

## COUNT TWELVE
## DECEPTIVE DEBT COLLECTION BY DEFENDANT AOAO

64.    Plaintiff restates and realleges paragraphs 1-63 by this reference, and incorporates them herein.

65.    Plaintiff suffered additional economic loss by a portion of his maintenance fees used to pay the AOAO's attorney and debt collector for a series of offensive, deceptive and/or unfair letters and activities specifically designed to inflict emotional distress on Plaintiff and to scare Plaintiff out of mediation. Said letters were transmitted by email using "debt collector" stationary, falsely

threatening: "… this is an attempt to collect debt. Any communication will be used for that purpose."

66.    Therefore, pursuant to HRS §480, Defendant legally caused $5,000 damages to Plaintiff, for each violation in this and the other Causes of Action. In addition, Plaintiff will request attorney's fees, pre-judgment interest and costs. For each violation by the AOAO there is a specific percentage for the debt collector attorney's fees included in Plaintiff's maintenance fees. The same represent each deceptive and/or unfair email sent by the debt collection law firm on 4/30/2020, 5/6/2020, 5/11/2020, 5/19/2020, 5/27/2020, 6/15/2020, 6/22/2020 and 6/24/2020. At a minimum of $5,000 for each violation, the total statutory damages to Plaintiff legally caused by Defendant's debt collector total at least $40,000.00.

**COUNT THIRTEEN**
**UNFAIR DEBT COLLECTION BY DEFENDANT AOAO**

67.    Plaintiff restates and realleges paragraphs 1-16, 18-65 by this reference, and incorporates them herein.

**SECOND CAUSE OF ACTION –**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

68.    Plaintiff restates and realleges paragraphs 1-67 by this reference, and incorporates them herein.

69.     Defendants conduct alleged herein, which caused the harm to Plaintiff was intentional or reckless, the conduct was outrageous, and the conduct caused Plaintiff extreme emotional distress.

70.     The aforesaid outrageous conduct includes those specific, intentional acts realleged from the prior allegations in this Complaint, as well as the following:

71.     On or about February 1, 2020, Plaintiff Dr. Johnson arrived at WAVECREST to relax and enjoy Molokai's remote peace and quiet at his residence.

72.     On March 4, 2020, Honorable David Y. Ige, Governor of Hawaii proclaimed an Emergency Period due to the outbreak of Covid-19. Plaintiff was informed of this proclamation by news media including StarAdvertiser.com /2020/03/05/Hawaii-newsliges-state-of-emergency.

73.     On or about March 19, 2020, Plaintiff attended a contentious meeting at the WAVECREST condominium property. It was revealed that WAVECREST was undercapitalized and under-reserved by about $20,000,000. The board president was blamed. During the proceedings, Plaintiff openly voiced his concerns over the board president's ability to deal with problems at the property.

74.     On March 23, 2020, Governor Ige issued a Supplementary Proclamation requiring Plaintiff and other persons in Hawaii to "stay at home or in their place of residence." The exceptions, applicable here, as Defendant knew,

were for "(t)ravel to … receive or obtain goods or services from the essential

businesses…" Included therein were "grocery stores". Another exception was for

"(t)ravel to care for elderly [or]..." "high risk persons".

75.     As of about April 6, 2020, the stores had closed on Molokai except for

hardware stores. The whole, remote island had shut down. A few convenience

stores remained open for call-in orders with long lines in the hot sun. A grocery

store -- one of two large stores on Molokai – closed until April 20, 2020, after two

employees tested positive for Covid-19. The few grocery stores which remained

open had substantial shortages.

76.     Hawaii is a remote destination – apx 2,390 miles from the U.S.

mainland. The island of Molokai, population 7,345, is 50.5 miles from Maui. Maui,

in turn, is 116.3 miles from Honolulu on the neighbor Island of Oahu. The fear for

residents, who might need intensive care or ventilators was, and is, palpable and

widespread.

77.     Plaintiff, aged 76, is both an elder and a "high risk person" within the

meaning of Governor Ige's "stay-home" order of March 23, 2020. The romance of

one of Hawaii's most remote destinations had suddenly turned to terror,

particularly for elderly, high risk residents.

78.     On April 12, 2020 at about 12:00 p.m., Plaintiff's friend arrived at

WAVECREST on an appointment with Plaintiff to retrieve a shopping list and

money for groceries. Dr. Johnson was "shut in" due to being in a Covid-19 risk factor (age 76).

79.     While exiting her vehicle, Plaintiff's friend was accosted by an aggressive male [later discovered to be the AOAO's president]. He officiously ordered Plaintiff's friend to go with him to the condominium project office. She was frightened.

80.     At the office, AOAO employees and the AOAO president were informed by Plaintiff's friend that she was there to help get some food to Dr. Johnson, and to pick up his shopping list for that purpose. In retaliation for Plaintiff's comments during the 3/15/20 condominium meeting, Defendant AOAO's staff and president outrageously refused to allow this brief visit for an elder in need of food.

81.     At that point, Plaintiff (76 years old) panicked. He was unable, due to the pandemic warnings (and his risk factors), to safely and promptly locate food at any stores which may have been open on Molokai. Plaintiff, in his retirement, is a novelist. His arms were shaking so much from fear, worry and severe emotional distress that he could not use a keyboard.

82.     In further retaliation against Plaintiff for his participation at a condominium meeting, Defendant AOAO fined Plaintiff $100, which was "Immediate", with no appeal. In the notice delivered to Plaintiff, Defendant AOAO

falsely and oppressively accused Plaintiff of a vague, unintelligible "Health/Behavioral Violation".

83.     Defendant AOAO thereby retaliated maliciously against Dr. Johnson, Plaintiff herein, all because he spoke up at a meeting on or about March 19, 2020.

84.     In addition, the foregoing violation notice from Defendant AOAO falsely accused Plaintiff of (A) violating House Rules requiring "outside workers" to sign in at the office, and (B) noncompliance with state vehicle registration requirements.

85.     When Defendant AOAO sent the retaliatory April 15, 2020 violation notice to Plaintiff, it knew full well that (A) Plaintiff had no outside workers on April 12, 2020, and (B) Plaintiff had not violated Hawaii's vehicle registration laws, duly suspended on March 16, 2020 by operation of State law.

86.     Furthermore, Defendant was well aware that on March 16, 2020, Hawaii's Governor issued a Supplementary Proclamation which suspended certain provisions of Hawaii Revised Statutes (HRS), including Chapter 286. Therefore, the registration and inspection of motor vehicles provisions were suspended, including HRS §286-25 and HRS §286-41, until May 15, 2020.

87.     Plaintiff, at every turn, attempted to reason with Defendant. He objected to the fine levied and to the harassment by Defendant AOAO of

Plaintiff's friends who tried to bring him food. To no avail. Plaintiff's only recourse was to retain counsel.

88.     On April 24, 2020, Plaintiff's Counsel sent a demand to Defendant AOAO and its managing agent to mediate. Among other things, the mediation demand provided:

> "**NOTICE**: Pursuant to HRS §514B-161(a)(1) mandatory mediation is demanded between the Owner (Dr. Johnson) and the board. A failure to agree to mediate equates to a refusal to mediate."

89.     On April 30, 2020, Defendant AOAO responded by its debt collector/attorney who stated *inter alia* "the association believes there is no reason to mediate the simple requirements of the association's house rules…" This violated HRS §514B-106(a).

90.     In further retaliation, when Defendant AOAO responded to inquiries from Plaintiff's attorney, it knew that the responses had to be forwarded to Plaintiff; and, the AOAO ratified and is bound by its attorney's false, retaliatory transmission by email, stating: "(w)e are debt collectors and this is an effort to collect a debt. Any information obtained by our office will be used for that purpose."

91.     There were at least five (5) such letters outrageously threatening debt collection. The debt collection notices attached intemperate letters. They attempted

29

to terrify and bully Plaintiff out of his mediation demand. None of these items had anything honest to do with collecting a debt.

92.    For its part, the managing agent, Hawaiiana Management Co. Ltd ("HMC"), outrageously refused to respond to the request to mediate pursuant to HRS §514B-161(a).

93.    On May 5, 2020, in view of Defendant AOAO's refusal to mediate and HMC's refusal to respond, Plaintiff's Counsel served both parties with an HRS §514B-154.5 records/information demand.

94.    On May 6, 2020, in retaliation for the mediation and records demands, Defendant AOAO outrageously sent a letter, through its debt collector/lawyer, threatening to file a formal complaint with the county and state enforcement authorities. This was for violating the Governor's orders. The violations were a misdemeanor according to the Governor's orders. The letter also threatened Plaintiff's attorney. Defendant AOAO is bound by its attorney's misconduct.

95.    On May 12, 2020, in further retaliation for speaking up at a meeting, for demanding documents, and for requesting mediation, Defendant AOAO outrageously sent Plaintiff another false "Notice of House Rule Violation". This time, Defendant AOAO imposed an additional fine of $250.00 on Plaintiff with a notice that the fine will be added to his maintenance fees. As with all

condominiums in Hawaii, the fees (and fines) if unpaid, lead to a lien and may result in foreclosure.

96.    In the violation notice sent to Plaintiff, Defendant AOAO again falsely accused Plaintiff of having "outside workers". Also, while registration procedures were suspended by Governor Ige's Proclamation, Defendant AOAO falsely accused Plaintiff of having an expired auto registration tag.

97.    On May 18, 2020, in further retaliation, Defendant AOAO outrageously sent Plaintiff another notice of violation, again falsely accusing him of having an "outside worker" and an "unpermitted" vehicle. Defendant AOAO levied another fine of $250.00 to be included in Plaintiff's maintenance fees, which can result lien and foreclosure.

98.    On May 19, 2020, in further retaliation, Defendant AOAO outrageously sent Plaintiff another notice of violation, again falsely accusing him of having an "outside worker" and an unpermitted vehicle. Defendant AOAO levied two fines on Plaintiff for $250/each, for a total of $500.00. These were, according to the notice, to "be included in your next homeowner's assessment".

99.    The foregoing outrageous conduct caused extreme and severe emotional distress to Plaintiff as aforesaid.

100.   As a result, Defendants legally, directly and proximately caused special and general damages to Plaintiff including injury, in amounts to be added according to proof.

101.   In committing Defendants' acts, violations, omissions and breaches of continuing duties alleged herein, Defendants, and each of them, acted oppressively, wantonly, recklessly, maliciously, fraudulently, grossly negligently, with a conscious disregard of the Plaintiff's rights, and/or with the intention of benefiting said Defendants, and with such malice as implies a spirit of mischief or criminal indifference to civil obligations, gross or willful conduct; or, an entire want of care raising the presumption of a conscious indifference to consequences, and with the intention of causing, or recklessly disregarding the probability of causing, injury to Plaintiffs, justifying imposition of exemplary damages against Defendants.

102.   Defendants, as a principal, or as an employer, had advance knowledge of the unfitness of some of the employees, agents, directors, or debt collectors involved herein, and employed them with a conscious disregard of the rights or well-being of others, and ratified the wrongful conduct for which damages are claimed. The oppression, recklessness, fraud or malice of Defendants' employees or agents was done on the part of one or more of Defendants' officers, directors, or managing agents. In so acting, Defendants acted recklessly; or intended to, and did, vex, annoy, injure and/or harass Plaintiff. As a result of such conduct, Plaintiff is entitled to exemplary and punitive damages, according to proof, against Defendants.

## THIRD CAUSE OF ACTION –
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

103.   Plaintiff restates and realleges paragraphs 1-102, by this reference.

104.   Based upon the foregoing, including ¶4 of this lawsuit, Defendants owed a duty to Plaintiff to conform to a certain standard of conduct to protect him against unreasonable risks. This duty was breached by Defendants, as aforesaid, and Plaintiff suffered continuing, serious, and severe emotional distress. Defendants' conduct alleged above was the legal, and proximate cause of Plaintiff's serious and severe emotional distress and fear for his life.

105.   Defendants' conduct alleged above was the legal, and proximate cause of Plaintiff's serious and severe emotional distress and fear for his life.

## FOURTH CAUSE OF ACTION – NEGLIGENCE

106.   Plaintiff restates and realleges paragraphs 1- 105 by this reference, and incorporates them herein.

107.   At all times herein relevant, Defendants had a duty or obligation, recognized by the law and owed to Plaintiff requiring Defendants to conform to a certain standard of conduct for the protection of Plaintiff and other residents against unreasonable risks of harm, including personal and/or mental injury.

108.   Defendants did not conform to the foregoing standards required as hereinabove alleged. Defendants thereby breached their aforesaid duty of reasonable care owed to Plaintiff.

109.   There is a reasonably close causal connection between the breach of Defendants' duty or obligation recognized by the law as aforesaid and the resulting mental and/or physical injuries caused by Defendants to Plaintiff.

110.   As a legal and/or proximate cause of Defendant's breach as aforesaid, Plaintiff has suffered, and continues to suffer actual loss or damages including, without limit, serious personal and/or mental injury.

111.   As a further legal and/or proximate cause of Defendants' conduct Plaintiff suffered serious and severe emotional distress, mental anguish, fear, anxiety, fatigue, and disturbance, which causes him great physical and/or mental pain all to his damage, according to proof.

WHEREFORE, Plaintiff prays:

A.   For treble damages or $5,000 for each violation, whichever is greater on the First Cause of Action;

B.   For general, special, and actual damages according to proof;

C.   For punitive damages according to proof on the Second, Third, and Fourth Causes of Action;

34

D.      For adverse inference and/or spoliation determinations against

Defendants regarding all information/records concealed, lost, or destroyed;

E.      For prejudgment interest;

F.      For personal liability of certain AOAO directors and former directors,

without indemnification;

G.      For Uyemura v. Wick damages;

H.      For attorney's fees on the First Cause of Action.

I.      For costs of suit;

J.      For such other further relief as the Court deems just.

DATED:  Honolulu, Hawaii, September 1, 2020.

_/s/ Stephen M. Shaw_____
STEPHEN M. SHAW, ESQ.
Attorney For Plaintiff
NORMAN P. JOHNSON, PhD.

## **DEMAND FOR JURY TRIAL**

Plaintiff NORMAN P. JOHNSON, PhD., through undersigned counsel,

demands a trial by jury on all claims in this action.

DATED:  Honolulu, Hawaii, September 1, 2020.

_/s/ Stephen M. Shaw_
STEPHEN M. SHAW, ESQ.
Attorney For Plaintiff
NORMAN P. JOHNSON, PhD.

1